IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal No. 20-8 |
| ) | Judge Nora Barry Fischer |
| JELAHN WILLIAMS, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

I.   INTRODUCTION

Presently before the Court is a counseled motion to reduce sentence under 18 U.S.C. § 3582(c) filed by Defendant Jelahn Williams, (Docket No. 956), the Government's opposition thereto, (Docket No. 961), and Defendant's Reply, (Docket No. 964). Defendant seeks to reduce the 151-month sentence imposed by the Honorable Kim R. Gibson to 135 months based on the retroactive changes to the assessment of status points set forth in Amendment 821 to the U.S. Sentencing Guidelines, the application of which would reduce the advisory guidelines range in his case. (Docket Nos. 904; 956). While the Government concedes that Defendant is eligible for a reduction, it maintains that the Court should deny the requested relief after considering the relevant § 3553(a) factors and because the Court imposed a stipulated sentence as part of Defendant's binding Rule 11(c)(1)(C) plea agreement. (Docket No. 961). After careful consideration of the parties' submissions, and for the following reasons, Defendant's Motion [956] is denied as the Court declines to exercise its discretion to reduce Defendant's sentence because he expressly waived the right to file the instant motion as part of his Rule 11(c)(1)(C) plea agreement and the 151-month term of imprisonment remains sufficient, but not greater than necessary to meet all of the goals of sentencing in this case.

II.   BACKGROUND

1

On June 3, 2020, a federal grand jury returned an Indictment charging Defendant with three offenses arising out of his conduct from July 5, 2018 to May 5, 2020. (Docket No. 29). In sum, Defendant was charged with each of the following: at Count One, Conspiracy to Distribute and to Possess With Intent to Distribute,[1] in violation of 21 U.S.C. § 846; at Count Two, Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956; and at Count Three, Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (*Id*.).

In July 2018, the Federal Bureau of Investigation received information that a Philadelphia-based drug trafficking organization ("Organization") was distributing heroin, fentanyl, crack cocaine, and methamphetamine in Indiana County, Pennsylvania. (Docket No. 777, ¶ 19). The investigation revealed that from July 2018 until May 2019, Christofer Waters led the Organization and coordinated with Defendant, who was in state prison at the time. (*Id*.). Waters and Defendant frequently discussed Waters' drug trafficking operation. (*Id*.). Defendant was paroled from state prison in April 2019, and around that same time, Waters incurred criminal charges and left Indiana County, leaving Defendant to assume leadership of the Organization. (*Id*. at ¶ 20). Within a month of his parole from state prison until May 2020, Defendant served as leader of the Organization, directing the flow of controlled substances from Philadelphia into Indiana County. (*Id*. at ¶ 21).

During that time, investigators intercepted communications from Defendant's telephone, in which he directed the supply, manufacturing, packaging, and distribution of controlled substances, including the arrangement of over 100 street-level transactions. (*Id*.). Defendant also participated in 20 wire transactions via Walmart-to-Walmart transfer services, totaling $14,039,

---

[1] Defendant was charged with conspiracy to distribute and to possess with intent to distribute 50 grams or more of methamphetamine, 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, 28 grams or more of a mixture and substance containing a detectable amount of cocaine base, and 40 grams or more of a mixture and substance containing a detectable amount of fentanyl and heroin. (Docket No. 29).

and directed other members of the Organization to wire money to him or on his behalf. (*Id*. at ¶ 22). Law enforcement determined that Defendant personally delivered, possessed, or directed others to distribute 120 grams of pure methamphetamine, 108 grams of a mixture containing methamphetamine, 84 grams of crack cocaine, and 20 grams of fentanyl. (*Id*. at ¶ 23). The converted drug weight of these substances equaled 2,966 kilograms. (*Id*.).

On November 6, 2015, Defendant pled guilty to Counts One and Two of the Indictment, pursuant to a plea agreement with the Government. (Docket No. 734). In exchange for pleading guilty, the Government conferred several benefits upon the Defendant. (Docket No. 734-1). First, the Government dismissed Count Three of the Indictment – Possession of a Firearm in Furtherance of a Drug Trafficking Crime – which would have carried a mandatory five-year term of incarceration to run consecutively to all other terms of incarceration. (*Id*. at ¶ B.1.); *see* 18 U.S.C. § 924(c)(1)(A)(i). Second, the Government did not object to Defendant's request that his federal sentence be ordered to run concurrently to his state parole sentence. (*Id*. at ¶ C.8.). Third, the parties agreed that an appropriate sentence was a total term of imprisonment of 151 months, no fine, and a term of supervised release of five (5) years at Counts One and Two. (*Id*. at ¶ C.6.). Additionally, Defendant agreed that he would not file a motion seeking relief under 18 U.S.C. § 3582(c)(2) if the Sentencing Guidelines were subsequently lowered by the Sentencing Commission. (*Id*.).

The U.S. Probation Office prepared a Presentence Investigation Report ("PIR") dated November 9, 2022. (Docket No. 777). The Probation Office calculated Defendant's total offense level to be 32, which included a base offense level of 30 based on the drug quantity; a 2-level enhancement for money laundering; a 3-level enhancement for his role as a manager or supervisor; and, a 3-level reduction for acceptance of responsibility. (*Id*. at ¶¶ 27–35, 37–39). The Probation

Office also determined that Defendant's subtotal criminal history score was three due to his prior convictions for disorderly conduct, burglary, and escape. (*Id*. at ¶¶ 41–43). For the burglary and escape offenses, the Indiana County Court of Common Pleas sentenced Defendant to fourteen (14) months' to six (6) years' imprisonment. (*Id*. at ¶ 42). In April 2019, he was paroled from state prison on those offenses. (*Id*.). Accordingly, he was assessed two status points under Guideline § 4A1.1(d) because he committed the instant offenses while serving that term of parole. (*Id*. at ¶ 44). Given same, his criminal history score of five resulted in a criminal history category of III. (*Id*. at ¶ 45).

At the sentencing hearing, the Court noted that the sentence recommended by the parties was sufficient, but not greater than necessary to meet all the goals of sentencing. (Docket No. 961). The Court's judgment reflected that Defendant was sentenced to a total term of 151 months' incarceration, consisting of concurrent terms of 151 months at Counts One and Two, followed by 5 years' supervised release.[2] (Docket No. 904). The Court also ordered Defendant to pay a $200 special assessment, forfeit $6,050, and waived any fine given Defendant's inability to pay. (*Id*.). Pursuant to the plea agreement, the Government then dismissed Count Three of the Indictment. (*Id*.).

Defendant remains in state custody as he is currently serving the 18-month term of imprisonment imposed by the Pennsylvania Parole Board at SCI Fayette. (Docket No. 904; 956). As such, the Bureau of Prisons has not calculated Defendant's anticipated release date. Defendant presented the Court with a reference letter from Samantha Crayton, a counselor at SCI-Fayette, a General Case Plan Report documenting the start and end dates for substance abuse programming, and a certificate demonstrating successful completion of an outpatient substance abuse program,

---

[2] The judgment also reflected that Defendant's 151-month term of imprisonment should run concurrent to an 18-month term of imprisonment imposed by the Pennsylvania Parole Board. (Docket No. 904).

all of which the Court has considered. (Docket No. 964, Exs. A–C). The matter has been fully briefed and was recently reassigned to the undersigned for prompt disposition.

### III.   LEGAL STANDARD

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) ("A federal court generally may not modify a term of imprisonment once it has been imposed."). One such specific authorization is 18 U.S.C. § 3582(c), which provides "an 'exception to the general rule of finality' over sentencing judgments." *United States v. Rodriguez*, 855 F.3d 526, 529 (3d Cir. 2017), *as amended* (May 1, 2017) (quoting *Dillon*, 560 U.S. at 824).

> Section 3582(c)(2) applies to amendments to the Sentencing Guidelines. It provides that a district court may reduce a sentence if two conditions are met: (1) the defendant was sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission" and (2) "a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

*Rodriguez*, 855 F.3d at 529 (quoting 18 U.S.C. § 3582(c)(2)) (further citation omitted). If it is determined that a defendant is eligible for relief under Guideline § 1B1.10, "§ 3852(c)(2) [next] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies […] is warranted in whole or in part under the particular circumstances of the case." *Dillon*, 560 U.S. at 827. "In addition, a district court 'shall consider the nature and seriousness of the danger to any person or the community' and 'may consider post-sentencing conduct of the defendant.'" *Rodriguez*, 855 F.3d at 529 (quoting U.S.S.G. § 1B1.10, cmt. n.1(B)(ii-iii)) (further citation omitted). A defendant does not have a right to an evidentiary hearing in section 3582(c) proceedings as such proceedings "do not constitute a

full resentencing of the defendant." U.S.S.G. § 1B1.10(a)(3); *see also* Fed. R. Crim. P. 43(b)(4) ("A defendant need not be present" when "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)").

IV. DISCUSSION

At the outset, the first step of the Court's analysis is uncontested as the parties do not dispute that Defendant is eligible for a sentence reduction under Amendment 821. (Docket Nos. 956; 961; 964). The Court agrees that Defendant is eligible for a reduction of his sentence at Counts One and Two because Amendment 821 eliminated the assessment of status points for offenders like Defendant who had only three criminal history points at the time of sentencing. *See* U.S.S.G. § 4A1.1(e) (eff. Nov. 1, 2023) ("Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.").

In this Court's estimation, if Amendment 821 was in effect at the time of Defendant's sentencing, he would have had three criminal history points, placing him in criminal history category II and his offense level would remain unchanged. Based on a total offense level of 32 and a criminal history category of II, Defendant's advisory guidelines range would be reduced to 135-168 months' incarceration. The relevant guideline, § 1B1.10(b)(2)(A), contains a limitation that Defendant's sentence may not be reduced "to a term that is less than the minimum of the amended guideline range," such that Defendant's sentence cannot be reduced below 135 months.

Although Defendant is eligible for a sentence reduction, the Court declines to exercise its discretion to reduce the sentence for several reasons.

Initially, the Court accepted the parties' Rule 11(c)(1)(C) plea agreement and imposed their

6

agreed upon sentence of 151 months' incarceration. The same provision of the plea agreement further provides that "Defendant agrees that he will not file a motion seeking relief under 18 U.S.C. § 3582(c)(2) if the Sentencing Guidelines are subsequently lowered by the Sentencing Commission." (Docket No. 734-1 at ¶ C.6.). Defendant has not offered any argument as to why the Court should now ignore the plain terms of the parties' plea agreement. In this instance, adjusting Defendant's sentence would undo the parties' agreement, violate the terms of the previously accepted plea agreement, and upend the "extensive negotiations" which have previously occurred, including the dismissal of Count Three which carried a mandatory, consecutive penalty of 60 months' incarceration upon a conviction. (Docket No. 961). At the same time, the Government also agreed that the sentence would be ordered by the Court to run concurrently to the undischarged state parole sentence that Defendant was subject to and is currently serving. (Docket No. 734-1 at ¶ C.8). Since Defendant expressly waived his right to pursue the instant motion and agreed to the specific sentence which was imposed, the Court will decline to exercise its discretion to reduce Defendant's sentence. *See, e.g.*, *United States v. Law*, Crim. No. 19-162-18, 2024 WL 2832919, at *4 (W.D. Pa. June 4, 2024) ("The Court will not disturb the agreement of the parties based upon the clear and unequivocal language in the plea agreement to which both parties agreed…and this Court accepted.").

Further, the recent amendments to the guidelines do not undermine the numerous aggravating factors which the Court considered, including:

- the seriousness of Defendant's offense conduct as he was convicted of conspiracy to distribute and to possess with intent to distribute significant quantities of methamphetamine, fentanyl, and crack cocaine, and which is also reflected in the mandatory minimum of 10 years' imprisonment and the potential statutory penalties of up to life imprisonment at Count One;

- the substantial quantity of drugs – 2,966 kilograms of converted drug

7

> weight of methamphetamine, fentanyl, and crack cocaine – attributed to Defendant, demonstrating the scope of his drug trafficking organization and its operations; and
>
> - his leadership role over a drug-trafficking organization within weeks of his parole from state prison and his coordination with the previous leader of that drug-trafficking organization during his incarceration.

(Docket No. 777, ¶¶ 19–23, 69). Such aggravating facts continue to support the imposition of a 151-month sentence and counsel against his request for a sentence reduction. (*Id.*).

At the time of Defendant's sentencing, the distribution of methamphetamine, fentanyl, and crack cocaine was – and continues to be – a significant problem in this District which has many detrimental effects on the community, including on government and social services and the users of such drugs, who quickly become addicted. *See e.g., United States v. Strothers*, Crim. No. 21-385-21, 2024 WL 493281, at *5 (W.D. Pa. Feb. 8, 2024); *United States v. Bastianelli*, Crim No. 17-305, 2018 WL 1015269, at *5 (W.D. Pa. Feb. 22, 2018).

It appears to the Court that Defendant continues to pose a threat to public safety because he completely disregarded the requirements of his parole from state prison when he assumed control over a drug trafficking organization. *See e.g.*, *Strothers*, 2024 WL 493281, at *5 (denying motion for sentence reduction, in part, because "consideration of public safety also counsels against a sentence reduction here."). Defendant's trafficking of methamphetamine, fentanyl, and crack cocaine is serious enough that Congress requires a mandatory minimum sentence of at least ten-years' incarceration. *See United States v. Cruse*, Crim. No. 13-157, 2018 WL 5281679, at *4 (W.D. Pa. Oct. 24, 2024) (Congress considers the seriousness of the offense when requiring mandatory minimum sentences). Altogether, drug trafficking is extremely dangerous and represents an enormous threat to the community. *See e.g.*, *United States v. Rosa-Robles*, Crim No. 19-380, 2024 WL 44939, at *3 (W.D. Pa. Feb. 6, 2024) ("Drug trafficking, on its own, presents a

risk of danger to the community.").

Moreover, Defendant places too much weight on his guidelines calculation, which is only one of the § 3553(a) factors that this Court must consider. Adjusting Defendant's sentence to the "low-end" of his re-calculated guidelines range because it was on the "low-end" of his previous guidelines range ignores and devalues the other § 3553(a) factors, such as the need for the sentence imposed to reflect the seriousness of the offense and to promote respect for the law. (Docket No. 956). In any event, Defendant's 151-month sentence remains in the middle of his re-calculated guidelines range.

Having carefully considered the parties' positions in light of the totality of the circumstances and all of the relevant § 3553(a) factors, the Court finds that the 151-month term of imprisonment remains sufficient, but not greater than necessary to meet all of the goals of sentencing in this case and denies Defendant's request for a discretionary sentence reduction under Amendment 821. *See Dillon*, 560 U.S. at 827. Nevertheless, the Court certainly commends Defendant on his completion of at least one program offered by the BOP and encourages him to pursue other programs as he completes his sentence and prepares himself for his eventual release.

V.   CONCLUSION

Based on the foregoing, Defendant's Motion [956] is denied, as the Court declines to exercise its discretion to reduce his sentence. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated: February 3, 2025

cc/ecf: All counsel of record